[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Polizzi*, Slip Opinion No. 2026-Ohio-2588.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-2588

THE STATE OF OHIO, APPELLEE, *v.* POLIZZI, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Polizzi*, Slip Opinion No. 2026-Ohio-2588.]

*Criminal law—Sentencing—R.C. 2929.14(C)(4)—Consecutive-sentencing findings—R.C. 2953.08(G)(2)—Appellate review of consecutive sentences—Proportionality review does not require courts to consider the total number of consecutive sentences and the resulting aggregate prison term when imposing or reviewing consecutive sentences—A trial court may consider the offender's overall conduct and the harm caused by his or her crimes when imposing consecutive sentences—On appeal, appellate court may examine whether trial court's findings supporting consecutive sentences are clearly and convincingly unsupported by the record and may also examine whether sentence is otherwise contrary to law—Court of appeals' judgment affirmed.*

(No. 2024-0312—Submitted October 7, 2025—Decided July 10, 2026.)

APPEAL from the Court of Appeals for Lake County,

Nos. 2020-L-016 and 2020-L-017, 2024-Ohio-142.

_____

SHANAHAN, J., authored the opinion of the court, which KENNEDY, C.J., and DEWINE, DETERS, and HAWKINS, JJ., joined. FISCHER, J., concurred in judgment only, with an opinion. BRUNNER, J., concurred in judgment only, with an opinion.

**SHANAHAN, J.**

{¶ 1} A former high-school teacher pleaded guilty to multiple counts of gross sexual imposition and sexual battery. The trial court imposed maximum consecutive sentences resulting in a 33-year aggregate prison term. The Eleventh District Court of Appeals vacated the sentence after determining that the trial court's consecutive-sentence findings lacked support in the record and remanded the case to the trial court for resentencing. *State v. Polizzi*, 2019-Ohio-2505, ¶ 47-48 (11th Dist.). The trial court held a resentencing hearing and imposed an aggregate prison term of 358 months (29 years and 10 months), which the appellate court affirmed. *State v. Polizzi*, 2021-Ohio-244, ¶ 17, 57 (11th Dist.). On appeal to this court, we initially denied jurisdiction, *State v. Polizzi*, 2022-Ohio-1606, but we later granted Polizzi's motion for reconsideration, accepted Polizzi's appeal, reversed the Eleventh District's judgment, and remanded the case to the Eleventh District for application of *State v. Gwynne*, 2022-Ohio-4607 ("*Gwynne IV*"). *State v. Polizzi*, 2022-Ohio-4728. After we reconsidered *Gwynne IV* in *State v. Gwynne*, 2023-Ohio-3851 ("*Gwynne V*"), the Eleventh District applied *Gwynne V* and reaffirmed the trial court's imposition of a 358-month aggregate prison term. 2024-Ohio-142, ¶ 3-4, 11 (11th Dist.). Polizzi has again appealed to this court.

{¶ 2} In this case, we address whether courts must consider the total number of consecutive sentences and the resulting aggregate prison term when imposing or reviewing consecutive sentences. Because we hold that proportionality review does not require courts to consider the total number of consecutive sentences and

the resulting aggregate prison term when imposing or reviewing consecutive sentences, we affirm the judgment of the court of appeals.

## I. BACKGROUND

{¶ 3} Appellant, Anthony J. Polizzi Jr., served as a high-school teacher, coach, and advisor. Polizzi became sexually involved with E.L., a 17-year-old student at the school. The sexual activity included touching and digital penetration and continued after E.L. had graduated. Several years after the sexual activity ceased, Polizzi reached out to E.L. E.L. wanted no contact with him.

{¶ 4} N.M. also was a student at the school. When she was 17 years old, Polizzi became sexually involved with her. The sexual activity included touching, digital penetration, and oral sex. Another student reported Polizzi to the school's administration after becoming suspicious that Polizzi's relationship with N.M. was inappropriate. The school terminated Polizzi. More than two years later, Polizzi sent N.M. texts containing sexual and vulgar comments and appeared at her place of employment. N.M. reported Polizzi's sexual activity against her and his conduct to the police.

{¶ 5} Polizzi was indicted on 81 counts of sexual offenses relating to E.L and N.M. Polizzi pleaded guilty to six counts of sexual battery and two counts of gross sexual imposition. Polizzi was sentenced to the maximum term on each count, all to run consecutive to each other for an aggregate prison term of 33 years, and he was classified as a Tier III sex offender.

{¶ 6} Polizzi appealed his sentence. The Eleventh District vacated the sentence, *Polizzi*, 2019-Ohio-2505, at ¶ 48 (11th Dist.), concluding that the record did not support finding (1) Polizzi posed a great risk to the public based on the likelihood that he will commit future crime and (2) the harm caused to the victims was permanent "or even as severe as the worst form of each of the charged crimes," *id.* at ¶ 47. The court of appeals remanded the case to the trial court for resentencing. *Id.* at ¶ 48.

**{¶ 7}** The trial court held a resentencing hearing, at which appellee, the State of Ohio, provided additional materials with its sentencing memorandum, defense counsel presented information relevant to Polizzi's behavior and remorse since his original sentencing, the victims made additional impact statements, and Polizzi was permitted to allocute. The trial court reduced the term on each count, all to run consecutive to each other for an aggregate prison term of 358 months.

**{¶ 8}** Polizzi appealed the sentence imposed at his resentencing. In a two-to-one decision, the court of appeals rejected his assignments of error and affirmed the trial court's judgment. *Polizzi*, 2021-Ohio-244, at ¶ 1, 57 (11th Dist.).

**{¶ 9}** Polizzi appealed the court of appeals' judgment to this court, but we declined jurisdiction. *Polizzi*, 2022-Ohio-1606. Polizzi filed a motion for reconsideration, which we granted. *Polizzi*, 2022-Ohio-4728. We accepted Polizzi's appeal, reversed the Eleventh District's judgment, and remanded the case to that court for application of *Gwynne IV*, 2022-Ohio-4607. *Polizzi*, 2022-Ohio-4728. In *Gwynne IV*, this court held that in making consecutive-sentencing findings, a trial court must consider the number of consecutive sentences imposed and the resulting aggregate prison term and that under R.C. 2953.08(G)(2), appellate courts need not defer to the sentencing court's findings. *Gwynne IV* at ¶ 1. Following the remand from this court but prior to review of Polizzi's sentence by the Eleventh District, this court granted reconsideration and vacated *Gwynne IV* in *Gwynne V*, 2023-Ohio-3851. Then, applying this court's lead opinion in *Gwynne V*, the Eleventh District reaffirmed the sentence imposed at Polizzi's resentencing. 2024-Ohio-142 at ¶ 1, 11 (11th Dist.).

**{¶ 10}** Polizzi filed a discretionary appeal to this court, raising six propositions of law. This court accepted the first two propositions of law for review but held the matter for the decision in 2023-0654, *State v. Glover*. 2024-Ohio-1832. After this court decided *Glover*, 2024-Ohio-5195, the stay in this case was lifted

and briefing was ordered. 2024-Ohio-5775. Polizzi's second proposition of law was dismissed as having been improvidently accepted. *Id.*

{¶ 11} Polizzi's appeal proceeded on the following proposition of law:

> Trial courts and appellate courts must consider the overall number of consecutive sentences and the aggregate sentence when imposing or reviewing consecutive sentences.

*See* 2024-Ohio-1832.

## II. ANALYSIS

{¶ 12} There are two distinct but related considerations in consecutive sentencing. First, there is the trial court's role. While not expressly required by R.C. 2929.14(C)(4), the aggregate prison term may be considered as the trial court deems appropriate as part of its proportionality analysis under the statute. Second, there is the appellate court's role. The appellate court reviews consecutive sentences under R.C. 2953.08(G)(2). This review is deferential and does not include consideration of the defendant's aggregate prison term.

### A. Consecutive-Sentencing Statutory Framework

{¶ 13} The primary goals of felony sentencing are to protect the public from future crime, punish the offender, and promote rehabilitation. R.C. 2929.11(A). Sentences must be "reasonably calculated" to achieve these purposes. R.C. 2929.11(B). Ohio law presumes that prison terms will run concurrently unless specific statutory conditions apply. R.C. 2929.41(A). One such condition is outlined in R.C. 2929.14(C)(4).

{¶ 14} Under R.C. 2929.14(C)(4), a trial court may impose consecutive sentences for multiple offenses if it finds that doing so is necessary to protect the public or to punish the offender. The court must also determine that the sentences are not disproportionate to the seriousness of the offender's conduct and the danger

the offender poses to the public. *Id.* The court must also find that at least one of three additional factors set forth in R.C. 2929.14(C)(4) is present. In this case, the trial court found that the additional factor under R.C. 2929.14(C)(4)(b) was present: Polizzi's multiple offenses were part of a course of conduct and caused harm so great that no single term adequately reflected the seriousness of his conduct.

{¶ 15} R.C. 2929.14(C)(4) mandates that the trial court find that consecutive sentences "are not disproportionate" to an offender's conduct and the danger he poses. The proportionality requirement is stated in the negative; the trial court is not required to find that consecutive sentences are proportionate to the seriousness of an offender's conduct and the danger he poses to the public before it may impose consecutive sentences. *Glover*, 2024-Ohio-5195, at ¶ 52 (lead opinion).

{¶ 16} Proportionality is to be distinguished from consistency, the latter relating to sentences given to others while the former relates to the sentences given to the offender, i.e., whether the punishment fits the crime, not how it compares with the punishment of others. *See State v. Hoffman*, 2023-Ohio-2645, ¶ 8 (11th Dist.).

{¶ 17} Appellate courts generally defer to trial courts on sentencing decisions. As the United States Supreme Court has stated, "it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence." *Solem v. Helm*, 463 U.S. 277, 290, fn. 16 (1983). Ohio law reflects this deference in R.C. 2953.08(G)(2), under which an appellate court may increase, reduce, or otherwise modify a sentence or vacate the sentence and remand the matter to the sentencing court for resentencing, but only if it finds that the record clearly and convincingly "'does not support' the trial court's finding that consecutive sentences are not disproportionate." (Emphasis omitted.) *Glover* at ¶ 52 (lead opinion), quoting R.C. 2953.08(G)(2)(a). The appellate court must find that the record does not support the trial court's *findings*

under R.C. 2929.14(C)—not that the appellate court would have imposed a different sentence.

{¶ 18} "'[C]lear and convincing evidence'" is proof that creates a "'firm belief or conviction as to the facts sought to be established.'" *Gwynne V*, 2023-Ohio-3851, at ¶ 14 (lead opinion), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. It is a firm belief that the record does not support the trial court's findings—more than a preponderance but less than beyond a reasonable doubt. *Id.*

### B. Significant Recent Case Law

{¶ 19} This court recently addressed consecutive sentencing and its appellate review in *Gwynne V* and *Glover*, 2024-Ohio-5195. Neither case produced a majority opinion.

{¶ 20} In *Gwynne IV*, this court held that consecutive prison sentences "must be made in consideration of the aggregate term to be imposed." 2022-Ohio-4607 at ¶ 1. It concluded that appellate review should be de novo, i.e., that appellate courts need not defer to the trial court's findings. *Id.* Rather, appellate courts were to review the record and "decide whether the record clearly and convincingly [did] not support the consecutive-sentence findings." *Id.*

{¶ 21} This court vacated *Gwynne IV* in *Gwynne V*, with the lead opinion highlighting that "[t]he plain language of R.C. 2953.08(G)(2) requires an appellate court to defer to a trial court's consecutive-sentence findings, and the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record," 2023-Ohio-3851 at ¶ 5 (lead opinion). The standard of review is deferential, and the appellate court may not simply substitute its judgment for that of the trial court. *Id.* at ¶ 15 (lead opinion).

{¶ 22} This court applied its lead opinion in *Gwynne V* in deciding *Glover*, 2024-Ohio-5195. In *Glover*, the First District Court of Appeals had reduced Glover's aggregate prison term from 60 years to 25 years. This court reversed the

First District's judgment and reinstated the sentences imposed by the trial court. *Glover* at ¶ 61 (lead opinion). The lead opinion emphasized that the appellate courts' standard of review set forth in R.C. 2953.08(G)(2) is deferential and that an appellate court may modify consecutive sentences only if it clearly and convincingly finds that the record does not support the trial court's consecutive-sentence findings. *Id.* at ¶ 44 (lead opinion). But the lead opinion specifically noted that "[n]owhere does [R.C. 2953.08(G)(2)] direct an appellate court to consider the defendant's aggregate sentence." *Id.* at ¶ 43 (lead opinion).

### C. Application to Polizzi

### 1. The trial court

{¶ 23} Ohio's felony-sentencing scheme focuses the trial court's attention on one offense at a time. This court has explained that "'[o]nly after the judge has imposed a separate prison term for each offense may the judge then consider in his discretion whether the offender should serve those terms concurrently or consecutively.'" *State v. Hairston*, 2008-Ohio-2338, ¶ 16, quoting *State v. Saxon*, 2006-Ohio-1245, ¶ 9.

{¶ 24} The trial court sentenced Polizzi on each offense within the statutory guidelines and made the findings required by R.C. 2929.14(C). The trial court found that consecutive sentences were necessary to protect the public based on the explicit and surreptitious messages Polizzi sent to N.M. two years after his sexual activity against her had ended. The trial court found that consecutive sentences were not disproportionate to the danger Polizzi posed given his lack of genuine remorse[1] and that he failed to appreciate the impact his actions had on the victims. The trial court found that consecutive sentences were not disproportionate to Polizzi's course of conduct, which included grooming multiple victims and

---

1. At Polizzi's original sentencing hearing, the trial-court judge indicated that Polizzi lacked remorse, having "told [his psychologist] . . . that [he] wanted [the victims] to suffer misery as a result of what they did to [him]."

threatening expulsion if they reported him. The trial court found that the harm caused by Polizzi's multiple offenses was so great or unusual that no single prison term would adequately reflect the seriousness of his conduct, a finding that was supported by the victim-impact statements. *See Polizzi*, 2021-Ohio-244, at ¶ 98 (11th Dist.).

### 2. Appellate review of consecutive sentencing

{¶ 25} The appellate-review statute, R.C. 2953.08(G)(2), provides the sole method for reviewing consecutive sentences and requires an appellate court to review the trial court's consecutive-sentence *findings*. The appellate court may modify the consecutive sentences only if the record clearly and convincingly does *not* support the trial court's consecutive-sentence findings or if "'the sentence is otherwise contrary to law.'" *Glover*, 2024-Ohio-5195, at ¶ 42 (lead opinion), quoting R.C. 2953.08(G)(2)(b). The appellate court cannot reweigh the evidence or substitute its judgment based on subjective disagreement with the trial court. *See id.* at ¶ 45 (lead opinion); *State v. Jones*, 2020-Ohio-6729, ¶ 35-37. The trial court is "clearly in the better position to judge [a] defendant's dangerousness and to ascertain the effect of the crimes on the victims." *State v. Jones*, 2001-Ohio-1341, ¶ 34.

{¶ 26} The opinion concurring in the judgment and concurring in part in *Glover* suggested that because R.C. 2929.14(C)(4) uses both "consecutive service" and "consecutive terms," the two phrases must have distinct meanings and that "'consecutive service' means the service of multiple prison terms, one after another." *Glover* at ¶ 65 (Fischer, J., concurring in the judgment and concurring in part). Once consecutive service is deemed appropriate, then the trial court should consider whether the aggregate prison term becomes disproportionate to the seriousness of the offender's conduct and to the danger posed, according to the opinion concurring in the judgment and concurring in part. *Id.* at ¶ 65-67 (Fischer, J., concurring in the judgment and concurring in part). From this, the opinion

concurring in the judgment and concurring in part suggested that trial courts are required to weigh proportionality as each additional term is added, stopping when the cumulative sentence becomes excessive, thus "necessarily review[ing] the aggregate prison term" in order to fulfill the statutory mandate. *Id.* at ¶ 68 (Fischer, J., concurring in the judgment and concurring in part). But R.C. 2929.14(C) does not require this approach, nor does the appellate-review statute require consideration of the aggregate prison term.

{¶ 27} In its entirety, R.C. 2929.14(C)(4) provides:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 28} The statute does not mention "aggregate prison term" or "aggregate sentence." When statutory language is plain and unambiguous, courts must apply it as written. *Jones v. Action Coupling & Equip., Inc.*, 2003-Ohio-1099, ¶ 12; *Summerville v. Forest Park*, 2010-Ohio-6280, ¶ 18. "Textualism, in its purest form, begins and ends with what the text says and fairly implies." Scalia & Garner, *Reading Law: The Interpretation of Legal Texts*, 16 (2012). Neither "consecutive service" nor "consecutive terms" equate to "aggregate prison term" or "aggregate sentence."

{¶ 29} Although some may view Polizzi's aggregate prison term as lengthy, it reflects the number and severity of the offenses committed by Polizzi. Both the trial court and the appellate court adhered to the General Assembly's directives in imposing a and reviewing Polizzi's aggregate prison term totaling 358 months.

### III. CONCLUSION

{¶ 30} After establishing that consecutive sentencing is appropriate for multiple offenses, the trial court has discretion to impose such sentences. In exercising this discretion, the trial court may consider the offender's overall conduct and the harm caused by the crimes. On appeal, review is deferential and limited by the appellate-review statute: the appellate court may examine whether the trial court's findings supporting consecutive sentences are clearly and convincingly unsupported by the record, R.C. 2953.08(G)(2)(a), and may also examine whether the sentence is "otherwise contrary to law," R.C. 2953.08(G)(2)(b). The number of consecutive sentences and the total length of the aggregate prison term are not subject to appellate review.

{¶ 31} The judgment of the Eleventh District Court of Appeals is affirmed.

Judgment affirmed.

_____

**FISCHER, J., concurring in judgment only.**

{¶ 32} This is the most recent case in the saga of whether courts must consider the total number of consecutive sentences and the resulting aggregate prison term when imposing consecutive sentences under R.C. 2929.14(C)(4) or when reviewing consecutive sentences under R.C. 2953.08(G)(2). *See State v. Gwynne*, 2022-Ohio-4607, *vacated by State v. Gwynne*, 2023-Ohio-3851; *State v. Glover*, 2024-Ohio-5195.

{¶ 33} Today, the majority opinion adopts the imperfect legal reasoning of the lead opinion in *Glover*, rejecting the proposition that the trial court must consider the aggregate prison term in a proportionality analysis under R.C. 2929.14(C)(4) and concluding that the trial court's proportionality analysis is insulated from appellate review.

{¶ 34} As I expressed in my separate opinion in *Glover*, the statutory scheme for imposing consecutive sentences requires a trial court to consider and determine the aggregate prison term in analyzing whether the consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. *Glover* at ¶ 67-69 (Fischer, J., concurring in judgment and concurring in part); *see also id.* at ¶ 73 (Stewart, J., dissenting) (agreeing that trial courts must consider and determine the aggregate sentence in the proportionality analysis). This conclusion is supported by the proportionality requirement in R.C. 2929.14(C)(4) and the General Assembly's statement in R.C. 2929.14(C)(9) that consecutive prison terms "imposed pursuant to [R.C. 2929.14(C)(4)]" are "the aggregate of all of the terms so imposed." And as a result, under R.C. 2953.08(G)(2)(a), an appellate court may analyze on appeal whether the record clearly and convincingly does not support the trial court's proportionality finding, which again establishes the aggregate prison term.

{¶ 35} However, because the majority opinion reaches the right result in this case by affirming the Eleventh District Court of Appeals' judgment affirming the trial court's judgment, I respectfully concur in judgment only.

## I. STATUTORY SENTENCING SCHEME

### A. Sentences for Individual Offenses

{¶ 36} While this case specifically deals with consecutive sentences imposed under R.C. 2929.14(C)(4) and an appellate court's authority to review a trial court's findings on appeal under R.C. 2953.08(G)(2)(a), we first need to understand the whole picture concerning how a trial court sentences an offender who has been found guilty of a felony offense.

{¶ 37} After an offender has been found guilty of an offense, the trial court imposes a sentence, which is the sanction or combination of sanctions imposed for an offense. *State v. Saxon*, 2006-Ohio-1245, ¶ 12-13, 15-16; R.C. 2929.01(EE) (a sentence is a sanction or combination of sanctions); R.C. 2929.01(DD) (a sanction is a penalty imposed on the offender, including a prison term imposed under R.C. 2929.14(C)); R.C. 2929.01(BB)(1) (a prison term is a sanction). When an offender has been found guilty of multiple offenses, the trial court does not order one combined sentence; rather, the trial court focuses on each offense individually and issues a separate sentence for each offense, as "Ohio's felony-sentencing scheme is clearly designed to focus the judge's attention on one offense at a time," *Saxon* at ¶ 8. The trial-court judge cannot merely lump all the offenses together to create a sentencing package to provide one single aggregate prison term, because this court has not adopted the sentencing-package doctrine. *See id.* at ¶ 10.

{¶ 38} As discussed by the majority opinion, when the trial court sentences an offender for an offense, its goal is to order a sentence that will protect the public from future crime by the offender and others, punish the offender, and promote the effective rehabilitation of the offender using the minimum sanctions necessary to avoid burdening state and local government resources. Majority opinion, ¶ 13,

citing R.C. 2929.11(A). In imposing a felony sentence, the trial court "has discretion to determine the most effective way to comply with the purposes and principles of sentencing," but "[i]n exercising that discretion, the court shall consider" various factors to determine the seriousness of the offender's conduct, the likelihood of recidivism, and other relevant factors to ensure compliance with the purposes and principles of sentencing. R.C. 2929.12(A).

{¶ 39} To evaluate the seriousness of the offender's conduct in a sentencing determination for a single offense, the trial court uses the nonexhaustive list of factors in R.C. 2929.12(B) and (C) to determine whether the seriousness of the offender's conduct is more or less serious than conduct normally constituting the offense. And to determine whether the offender poses a danger to the public for individual offenses, the trial court uses the nonexhaustive list of factors in R.C. 2929.12(D) and (E) to determine whether the offender is likely to commit future crimes.

{¶ 40} After considering the relevant factors under R.C. 2929.12, the trial court has discretion to determine the appropriate sentence for the offense, so long as the sentence is within the sentencing range provided by the General Assembly for that offense. *See State v. Marcum*, 2016-Ohio-1002, ¶ 13; *State v. Foster*, 2006-Ohio-856, ¶ 100, *abrogated on other grounds by Oregon v. Ice*, 555 U.S. 160 (2009); R.C. 2929.12(A). Only after the court has sentenced the offender on all offenses individually does the court consider whether the sentences that include prison terms should be served concurrently or consecutively. *Saxon*, 2006-Ohio-1245, at ¶ 9; *see also Bobo v. Dept. of Rehab. & Corr*., 2011-Ohio-4984, ¶ 13 (10th Dist.); *State v. Bellamy*, 2009-Ohio-888, ¶ 12 (2d Dist.); R.C. 2929.41.

## B. Concurrent or Consecutive Service of Sentences with Prison Terms

{¶ 41} When an offender has been convicted of multiple offenses and the trial court has sentenced the offender to a prison term on more than one of those offenses, the general presumption is that the prison terms will be served

concurrently, that is, at the same time. *See State v. Jones*, 2024-Ohio-1083, ¶ 11; R.C. 2929.41(A). When the offender serves all prison terms concurrently, the offender's aggregate prison term equals the longest prison sentence the trial court imposed on the offender for any single offense.

{¶ 42} But there are situations in which an offender may be required to serve prison terms consecutively, that is, one after another. *See* R.C. 2929.14(C) and (H). A trial court is required to sentence an offender to consecutive prison terms for conduct detailed in R.C. 2929.14(C)(1) through (3), (C)(5) through (8), and (H)(1). If the offender's conduct does not mandate consecutive service of prison terms, i.e., consecutive sentences, a trial court may still order the offender to serve consecutive prison terms if the court makes three findings under R.C. 2929.14(C)(4).

{¶ 43} When a trial court sentences an offender to consecutive prison terms, including under R.C. 2929.14(C)(4), "the term to be served is the aggregate of all of the terms so imposed," R.C. 2929.14(C)(9). Thus, when a trial court orders an offender to serve consecutive prison terms, the total number of years of incarceration is the aggregate of those terms. *See id.*

### C. Consecutive Sentences under R.C. 2929.14(C)(4)

{¶ 44} Under R.C. 2929.14(C)(4), the trial court must make three findings before it may require the offender to serve consecutive prison terms: (1) consecutive service is necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) any one of three aggravating factors is also met. *See State v. Bonnell*, 2014-Ohio-3177, syllabus. This appeal requires us to look at the first two findings.

*1. Consecutive service is necessary to protect the public from future crime or to punish the offender*

{¶ 45} The first finding the trial court must make is that consecutive service

of prison terms is necessary to protect the public from future crime or to punish the offender. *See* R.C. 2929.14(C)(4) ("If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the *consecutive service* is necessary to protect the public from future crime or to punish the offender . . . ." [Emphasis added.]). At this stage of the analysis, the trial court determines whether the goals of protecting the public or punishing the offender require the offender to serve some sentences with prison terms consecutively rather than serving all sentences with prison terms concurrently. *Glover*, 2024-Ohio-5195, at ¶ 66 (Fischer, J., concurring in judgment and concurring in part). To do this, the trial court evaluates whether concurrent service of all sentences with prison terms imposed—i.e., the longest term of imprisonment imposed on the offender for any one of the multiple offenses—sufficiently protects the public from future crime or sufficiently punishes the offender.

**{¶ 46}** Here, the trial court sentenced appellant, Anthony J. Polizzi, to the second highest term of imprisonment on each count: a 17-month prison term for each fourth-degree-felony gross-sexual-imposition count and a 54-month prison term for each third-degree-felony sexual-battery count. *See* R.C. 2929.14(A)(3)(a) and (A)(4). Thus, the trial court had to determine whether 54 months in prison— the term of imprisonment that Polizzi would serve if all sentences with prison terms ran concurrently—sufficiently protected the public from future crime or sufficiently punished Polizzi. If the trial court determined that a 54-month term of imprisonment with all sentences with prison terms running concurrently was insufficient to satisfy those goals, which it did here, then the trial court has determined that *consecutive service* of two or more sentences with prison terms is necessary to accomplish those goals; the only way Polizzi can be ordered to spend more time in prison than what the concurrent sentences provide is if the court runs two or more sentences consecutively to create a longer prison term.

16

{¶ 47} In this step, there is no consideration of any potential aggregate prison term, because the trial court is not considering whether any particular combination of consecutive service of sentences with prison terms is necessary but, rather, whether some consecutive service of prison terms—instead of concurrent service of all prison terms—is necessary. *See Glover* at ¶ 66 (Fischer, J., concurring in judgment and concurring in part). If the court determines that the concurrent sentence is insufficient, i.e., that *consecutive service* of two or more sentences with prison terms is necessary, it moves to the second finding.

2. *Consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public*

{¶ 48} For the trial court to sentence the offender to serve consecutive prison terms, the trial court must make a second finding that "*consecutive sentences are not disproportionate* to the seriousness of the offender's conduct and to the danger the offender poses to the public." (Emphasis added.) R.C. 2929.14(C)(4). The majority opinion concludes that under this proportionality analysis, the trial court may, but is not required to, consider the aggregate prison term imposed under R.C. 2929.14(C)(4) and that the consecutive sentences imposed do not need to be proportional to the seriousness of the offender's conduct and to the danger the offender poses to the public. Majority opinion at ¶ 14-15. The majority opinion is incorrect on both fronts.

**a. R.C. 2929.14(C)(4) requires a trial court to find consecutive sentences to be proportional to the seriousness of the offender's conduct and to the danger the offender poses to the public**

{¶ 49} The majority opinion essentially concludes that no proportionality analysis is required under R.C. 2929.14(C)(4). The majority opinion reads the provision's double negative, "not disproportionate," as *not* requiring that a trial court to find that consecutive sentences *are proportionate* to the seriousness of the offender's conduct. *See* majority opinion at ¶ 15, citing *Glover*, 2024-Ohio-5195,

at ¶ 52 (lead opinion). It is unclear what analysis, if any, the trial court would need to do under the majority opinion's reading of R.C. 2929.14(C)(4) because if the trial court is not determining whether two things are "not disproportionate," what is the trial court analyzing? Like the lead opinion in *Glover*, the majority opinion here does not explain what this analysis requires. The majority opinion's reading of R.C. 2929.14(C)(4) eliminates the proportionality analysis that is specifically required by a plain reading of the provision.

{¶ 50} Under R.C. 2929.14(C)(4), a trial court must make a finding that "consecutive sentences *are not disproportionate to* the seriousness of the offender's conduct and to the danger the offender poses to the public." (Emphasis added.) The double negative "not disproportionate" means proportionate. This conclusion is clear when we look and apply the definitions of "disproportionate" and "proportionate."

{¶ 51} The words proportionate and disproportionate are mutually exclusive and the only possible options when assessing proportionality. When something is disproportionate to something else, that means that those two things are "out of proportion." *Merriam-Webster Online*, https://www.merriam-webster.com/dictionary/disproportionate (accessed Apr. 22, 2026) [https://perma.cc/33NR-TLYZ]; *see also Black's Law Dictionary* (12th Ed. 2024) (defining "disproportionate" as "[h]aving too much or too little in relation to something else; not suitable in comparison with something else in size, amount, importance, etc."). When something is proportionate to something else, those two things correspond in size, degree, or intensity or have the same or a constant ratio. *See Merriam-Webster Online*, https://www.merriam-webster.com/dictionary/proportional (accessed, Apr. 22, 2026) [https://perma.cc/9VLQ-LBWP]. "Disproportionate" specifically means to not be proportionate. Thus, "not disproportionate" means proportionate.

{¶ 52} Applying these definitions further illustrates this point. If something

is *proportionate* to something else, then those two things correspond in ratio and are thus *not disproportionate*, i.e., not out of proportion to one another. If something is *disproportionate* to something else, i.e., out of proportion, then those two things are not of the same ratio and are thus *not proportionate*. And if something is *not disproportionate* to something else, i.e., not out of proportion, then those two things are not not of the same ratio and thus *are proportionate*.

{¶ 53} Two things that are proportionate to one another, i.e., of the same degree, ratio, or intensity, are also not disproportionate to one another. While there can be degrees of disproportion, as illustrated by our precedent analyzing the Eighth Amendment to the United States Constitution's prohibition against cruel and unusual punishment, *see State v. Hairston*, 2008-Ohio-2338, ¶ 20 ("Where none of the individual sentences imposed on an offender are grossly disproportionate to their respective offenses, an aggregate prison term resulting from consecutive imposition of those sentences does not constitute cruel and unusual punishment."), any degree of disproportion between two things still makes those two things disproportionate to one another. Even when two things are close to being proportionate, they are still disproportionate to one another. All in all, either two things are proportionate to one another or they are not and are thus disproportionate to one another. Under R.C. 2929.14(C)(4), there is no middle ground. For that reason, the majority opinion's interpretation of the proportionality requirement in R.C. 2929.14(C)(4) is incorrect.

{¶ 54} We must apply what the General Assembly has said, not what it meant to say. *See Z.J. v. R.M.*, 2025-Ohio-5662, ¶ 18; *Slingluff v. Weaver*, 66 Ohio St. 621 (1902), paragraph two of the syllabus. When we read the term "not disproportionate" in a logical way that is consistent with its definition, R.C. 2929.14(C)'s clause stating that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public" requires the trial court to impose consecutive sentences that total an

aggregate amount that corresponds to the seriousness of the offender's conduct and to the danger the offender poses to the public. This means that if the offender's conduct is less serious and the offender is less dangerous to the public, proportionality requires the trial court to impose consecutive prison terms that total an aggregate amount that falls within the lower range of possible consecutive prison terms. But if the offender's conduct is more serious and the offender is more dangerous to the public, proportionality requires the trial court to impose consecutive prison terms that total an aggregate amount that falls within the higher range of possible consecutive prison terms. And this conclusion is supported by our understanding of proportionality in sentencing that the punishment should fit the crime. *See* R.C. 2929.05(A); R.C. 2929.11(B); *State v. Anderson,* 2017-Ohio-5656, ¶ 38, 42.

{¶ 55} To begin its proportionality analysis, the trial court must know the seriousness of the offender's conduct and the danger the offender poses to the public. As noted here by the Eleventh District, R.C. 2929.14(C)(4) leaves the trial court without guidance to evaluate the seriousness of the offender's conduct and the danger the offender poses to the public as it relates to multiple offenses: "Based on the pronouncement in [*State v.*] *Gwynne*[, 2019-Ohio-4761, ¶ 17,] that the R.C. 2929.11 and 2929.12 factors only apply to *individual* sentences, what is there to guide a trial court and/or a reviewing court when confronted with such a broad range of potential sentencing?" 2021-Ohio-244, ¶ 48 (11th Dist.), *rev'd*, 2022-Ohio-4728. But since the trial court would have already determined the seriousness of each individual offense under R.C. 2929.12(A) through (C) and the danger the offender poses to the public for each individual offense under R.C. 2929.12(D) and (E), it only makes sense that those already determined factors would carry over to the trial court's proportionality analysis under R.C. 2929.14(C)(4) since the "offender's conduct" relates to "multiple offenses" and those "multiple offenses" are the combination of the individual offenses for which the offender has already

been sentenced. Thus, the trial court would consider in totality the determinations under R.C. 2929.12 that were made for each individual offense to determine the seriousness of the offender's conduct and the danger the offender poses to the public as related to the "multiple offenses" in R.C. 2929.14(C)(4).

{¶ 56} And while this analysis would necessarily require consideration of previously determined factors under R.C. 2929.11 and 2929.12 for each individual sentence, the trial court is not required to place these findings on the record. *See State v. Jones*, 2020-Ohio-6729, ¶ 20; *State v. Wilson*, 2011-Ohio-2669, ¶ 31. While the trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate those findings into its sentencing entry, the court has no obligation to state its reasons on the record to support those findings. *Bonnell*, 2014-Ohio-3177, at syllabus.

{¶ 57} Once the trial court has determined the seriousness of the offender's conduct and the danger the offender poses to the public for the multiple offenses, the court determines whether "consecutive sentences" are not disproportionate, i.e., whether they are proportional. Using the range of available aggregate prison terms that result from running individual sentences consecutively, the trial court chooses the combination of individual sentences that, if run consecutively, would result in an aggregate prison term that is proportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. *See* R.C. 2929.14(C)(4). This is because the individual sentences that the court chooses to run consecutively result in the "consecutive prison terms," i.e., "the aggregate of all terms so imposed," R.C. 2929.14(C)(9).

### b. The "consecutive sentences" in the proportionality analysis form the aggregate prison term imposed under R.C. 2929.14(C)(4)

{¶ 58} With the reality that there must be a number associated with the consecutive sentences to determine proportionality, the majority opinion maintains that the trial court *may* consider the aggregate prison term imposed under R.C.

2929.14(C)(4) in its proportionality analysis but contends that R.C. 2929.14(C)(4) does not *require* consideration of the aggregate prison term, because that term is not mentioned in R.C. 2929.14(C)(4). *See* majority opinion at ¶ 12, 28. But the majority's conclusion is supported only if the proportionality clause in R.C. 2929.14(C)(4) is read out of context.

{¶ 59} When interpreting a statute, words and phrases are not read in isolation but rather are considered in the context of the statute as a whole. *Z.J.*, 2025-Ohio-5662, at ¶ 25. Thus, we must interpret the term "consecutive sentences" in R.C. 2929.14(C)(4) in the context of the entire statutory scheme—here, R.C. 2929.14 and the applicable definitions in R.C. 2929.01.

{¶ 60} The term "consecutive sentences" is not defined in either R.C. 2929.14 or R.C. 2929.01. But the General Assembly has stated that "'[s]entence' means the sanction or combination of sanctions imposed by the sentencing court." R.C. 2929.01(EE). A "sanction" is "any penalty imposed upon an offender" as punishment for an offense, which includes any sanction imposed under R.C. 2929.14. R.C. 2929.01(DD). And a prison term, like one imposed under R.C. 2929.14, is a "sanction[]," R.C. 2929.01(BB)(1). Thus, as discussed previously, when a trial court orders an offender to serve a term of imprisonment for an offense, that prison term is a part of the sentence for that offense. *See Saxon*, 2006-Ohio-1245, at ¶ 12-13, 15-16. So when a trial court orders a prison term to be served consecutively to another prison term, which are "consecutive prison terms," in reality, the court orders one sentence to be served consecutively to a different sentence, i.e., it orders "consecutive sentences." Thus, for purposes of R.C. 2929.14(C)(4), consecutive sentences are consecutive prison terms.

{¶ 61} And in R.C. 2929.14(C)(9), the General Assembly stated that "[w]hen consecutive prison terms are imposed pursuant to [R.C. 2929.14(C)(4)], . . . the term to be served is the aggregate of all the terms so imposed." The General Assembly thus treats consecutive prison terms imposed under R.C. 2929.14(C)(4)

as an aggregate unit. *See Glover*, 2024-Ohio-5195, at ¶ 67 (Fischer, J., concurring in judgment and concurring in part). Logic dictates that because the "consecutive sentences" mentioned in the proportionality clause of R.C. 2929.14(C)(4) necessarily means consecutive prison terms imposed under R.C. 2929.14(C)(4), the "consecutive sentences" are by definition under R.C. 2929.14(C)(9) the aggregate of all terms, i.e., the aggregate prison term.

{¶ 62} Accordingly, when the trial court chooses "consecutive sentences" from the range of available individual sentences that can be run consecutively, because the total number of years of incarceration resulting from running those individual sentences consecutively is proportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, that total is the aggregate prison term imposed under R.C. 2929.14(C)(4) in accordance with R.C. 2929.14(C)(9). So while R.C. 2929.14(C)(4) does not expressly use the terms "aggregate sentence" or "aggregate prison terms," based on the plain language of the provision and an understanding of the sentencing scheme and applicable definitions, a trial court establishes the aggregate prison term in the proportionality analysis under R.C. 2929.14(C).

{¶ 63} To further support this point, there is no number other than the total number of years of incarceration achieved by running individual sentences consecutively that the trial court could use in its proportionality analysis. The trial court cannot consider in its proportionality analysis the concurrent service of all prison terms, because R.C. 2929.14(C)(4) specifically refers to "consecutive sentences." Additionally, if the court were to consider concurrent service, the court would essentially be making the same determination that is required in making the first finding under R.C. 2929.14(C)(4), rendering the proportionality analysis superfluous. So any consideration of the aggregate prison term served under concurrent service of all prison terms is out.

{¶ 64} And that leaves only the trial court's choosing the combination of

individual sentences to run consecutively that equal an aggregate prison term that would be "not disproportionate," i.e. proportionate, to the seriousness of the offender's conduct and to the danger the offender poses to the public. And the consecutive sentences that the trial court deems proportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public are the consecutive prison terms imposed under R.C. 2929.14(C)(4) and thus are the aggregate prison term under R.C. 2929.14(C)(9).

*c. Case comparisons are not required to determine proportionality under R.C. 2929.14(C)(4)*

{¶ 65} Polizzi argues that proportionality review under R.C. 2929.14(C)(4) should require some comparison between sentences imposed in similar cases. The majority opinion rejects this argument because proportionality is distinguished from consistency. Majority opinion at ¶ 16, citing *State v. Hoffman*, 2023-Ohio-2645, ¶ 8 (11th Dist.); *see also State v. Moore*, 2014-Ohio-5135, ¶ 17 (8th Dist.). While I agree with the majority opinion that comparing similar cases to the offender's case is not required in the proportionality analysis under R.C. 2929.14(C)(4), I reach that conclusion for different reasons.

{¶ 66} Contrary to the majority's view, case comparisons, which establish consistency between sentences in different cases, are commonly used in proportionality determinations. Courts use case comparisons in proportionality-sentencing analyses for individual sentences to determine whether the crime fits the punishment. *See, e.g.*, R.C. 2929.05(A) (General Assembly mandated this court to review capital cases to determine whether the "sentence is excessive or disproportionate to the penalty imposed in similar cases"); R.C. 2929.11(B) (when calculating the appropriate sentence for an individual offense, the sentence should be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, *and* consistent with sentences imposed for similar crimes committed by similar offenders" [emphasis added]). And case

comparison is a tool we use to analyze the proportionality requirement at the heart of the Eighth Amendment. *See Anderson*, 2017-Ohio-5656, at ¶ 38, 42 (comparing cases to determine whether mandatory firearm specification included in a juvenile's sentence violated the proportionality requirement at the heart of the Eighth Amendment).

{¶ 67} But while case comparisons are used in other proportionality analyses, that does not mean that they are required here. The General Assembly mandated the use of case comparisons in proportionality review of capital cases, R.C. 2929.05(A), and in proportionality review of individual sentences, R.C. 2929.11(B), but it did not mandate the same for proportionality review of consecutive sentences under R.C. 2929.14(C)(4). The absence of such a requirement under R.C. 2929.14(C)(4) indicates that there is no requirement for case comparison in consecutive sentencing. *See Hulsmeyer v. Hospice of Southwest Ohio, Inc.*, 2014-Ohio-5511, ¶ 26 ("if the General Assembly could have used a particular word in a statute but did not, we will not add that word by judicial fiat"). And because the Eighth Amendment proportionality review does not apply to consecutive sentences*, see Hairston*, 2008-Ohio-2338, at ¶ 20, cases analyzed under that amendment provide no basis to justify using case comparisons in this context. Thus, I agree with the majority opinion that case comparisons are not required in proportionality determinations for consecutive sentences under R.C. 2929.14(C), albeit for different reasons.

### D. Appeals of Consecutive Sentences

{¶ 68} "R.C. 2953.08 specifically and comprehensively defines the parameters and standards—including the standard of review—for felony-sentencing appeals." *Marcum*, 2016-Ohio-1002, at ¶ 21. There are only a few situations in which an offender is not permitted to appeal under R.C. 2953.08, and appellate review of the trial court's order that the offender serve consecutive sentences under R.C. 2929.14(C)(4) is not one of those situations. *See* R.C.

SUPREME COURT OF OHIO

2953.08(D)(1) (appeal for an authorized sentence that was jointly recommended by the parties and imposed by the court is not subject to review under R.C. 2953.08); R.C. 2953.08(D)(2) (a sentence imposed under R.C. 2929.14(B)(2)(b) is not subject to review under R.C. 2953.08); R.C. 2953.08(D)(3) (a sentence for aggravated murder or murder is not subject to review under R.C. 2953.08).

{¶ 69} A defendant may appeal a trial court's consecutive-sentence findings under R.C. 2929.14(C)(4) if "[t]he sentence is contrary to law," R.C. 2953.08(A)(4). The appellate court has authority under R.C. 2953.08(G)(2) to review the trial court's sentencing findings, including those made under R.C. 2929.14(C)(4).

{¶ 70} "R.C. 2953.08(G)(2)(a) compels appellate courts to modify or vacate sentences if they find by clear and convincing evidence that the record does not support any relevant findings" under R.C. 2929.14(C)(4). *Marcum* at ¶ 22; R.C. 2953.08(G)(2)(a); *see also Jones*, 2024-Ohio-1083, at ¶ 13. And as discussed previously, when the trial court finds that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," R.C. 2929.14(C)(4), the trial court determines the combination of consecutive sentences that total an aggregate amount, which results in the aggregate prison term, that is proportional to the seriousness of the offender's conduct and the danger the offender poses to the public. That is a relevant finding made under R.C. 2929.14(C)(4). Thus, contrary to the majority opinion's holding, *see* majority opinion at ¶ 26, the appellate court has the authority under R.C. 2953.08(G)(2)(a) to review the trial court's R.C. 2929.14(C)(4) consecutive-sentencing findings, which include the aggregate prison term imposed under R.C. 2929.14(C)(4).

{¶ 71} The General Assembly has made it clear that when reviewing the trial court's consecutive-sentencing findings made under R.C. 2929.14(C)(4), the appellate court's standard of review is not wholly deferential to the trial court: "The

appellate court's standard for review is not whether the sentencing court abused its discretion," R.C. 2953.08(G)(2). Rather, the General Assembly mandated a clear-and-convincing-evidence standard of review: "The appellate court may take any action authorized by this division if it clearly and convincingly finds" that either "the record does not support the sentencing court's findings under [R.C. 2929.14(C)]," R.C. 2953.08(G)(2)(a), or "the sentence is otherwise contrary to law," R.C. 2953.08(G)(2)(b).

{¶ 72} Clear and convincing evidence is an evidentiary standard establishing a burden of proof. *See In re Z.C.*, 2023-Ohio-4703, ¶ 7-8; *Glover*, 2024-Ohio-5195, at ¶ 46 (lead opinion). As noted by the majority opinion here, for an appellate court to determine whether there is clear and convincing evidence, the evidence must create a """"firm belief or conviction as to the facts sought to be established."""" Majority opinion at ¶ 18, quoting *Gwynne*, 2023-Ohio-3851, at ¶ 14 (lead opinion), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. Thus, if the appellate court reviews the trial court's three consecutive-sentencing findings under R.C. 2929.14(C)(4) and determines that the evidence in the record creates a firm belief that the trial court's findings are not supported by the record, the appellate court may vacate or modify the trial court's sentence. *See* R.C. 2953.08(G)(2).

{¶ 73} While this standard of review is certainly deferential to the trial court's sentencing determinations, there can be no doubt that the appellate court independently determines whether the trial court's sentencing findings are not supported by the record. Appellate courts cannot give deference to a trial court's R.C. 2929.14(C)(4) consecutive-sentencing findings under a clear-and-convincing-evidence standard of review, because doing so would be tantamount to applying a sufficiency or manifest-weight standard of review. *See Z.C.* at ¶ 8-9. Thus, the appellate court independently determines whether the trial court's sentencing findings under R.C. 2929.14(C)(4) are *not* supported by clear and convincing

evidence in the record.

{¶ 74} As for the appellate court's consideration of the evidence and facts in the record that underly the trial court's consecutive-sentencing findings, the General Assembly mandated that the appellate court "review the record, including the findings underlying the sentence or modification given by the sentencing court," R.C. 2953.08(G)(2). The "record to be reviewed" includes presentence, psychiatric, or other investigative reports submitted before the sentencing hearing, the trial record, any oral or written statements made at the sentencing hearing, and any written findings that the trial court was required to make under R.C. 2929.20(I). R.C. 2953.08(F).

{¶ 75} Unfortunately, the General Assembly did not set forth a standard of review for the appellate court when reviewing the trial court's factual findings. Nowhere in R.C. 2953.08 does the General Assembly require the appellate court to give deference to the trial court's factual findings that underly the sentencing findings. *See Glover*, 2024-Ohio-5195, at ¶ 84 (Stewart, J., dissenting). And nowhere in R.C. 2953.08 does the General Assembly give the appellate court the authority to conduct a freestanding inquiry to review the trial court's factual findings. *See Jones*, 2020-Ohio-6729, at ¶ 42. Plainly, the General Assembly knows how to do both. *See, e.g.*, R.C. 3915.16 ("The court shall give deference to the actions of the [Interstate Insurance Product Regulation] Commission consistent with applicable law . . . ."); R.C. 4731.11 ("The court shall give deference to the actions of the Interstate Commission consistent with applicable law . . . ."); R.C. 2929.05(A) (in a capital case, this court reviews the judgment and death sentence and independently weighs all the evidence in the record to determine whether the sentence is appropriate).

{¶ 76} But while R.C. 2953.08(G)(2) is silent about the trial court's factual findings, we can apply our case law to fill in the gap, as it is a "well-established rule that the General Assembly will not be presumed to have intended to abrogate

a settled rule of the common law unless the language used in a statute clearly imports such intention," *State ex rel. Hunt v. Fronizer*, 77 Ohio St. 7, 16 (1907).

{¶ 77} And our case law is clear that an appellate court accepts any of the trial court's factual findings as true if those findings are supported by some competent, credible evidence. *See State v. O'Malley*, 2022-Ohio-3207, ¶ 33; *State v. Burnside*, 2003-Ohio-5372, ¶ 8; *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990). So even if conflicting evidence in the record would sway an appellate court to find by clear and convincing evidence that a trial court's consecutive-sentencing findings are not supported by the record but the trial court, as the factfinder, made determinations regarding that conflicting evidence, the appellate court must still take those findings as true so long as they are supported by some competent, credible evidence.

{¶ 78} For these reasons, I disagree with the majority opinion's characterization of appellate review of a trial court's R.C. 2929.14(C)(4) consecutive-sentencing findings. I would hold that the appellate court reviews the trial court's consecutive-sentencing findings under R.C. 2929.14(C)(4), which include the trial court's determination of the consecutive sentences deemed proportional to the seriousness of the offender's conduct and to the danger the offender poses to the public, which forms the aggregate prison term, to determine whether the consecutive-sentencing findings are not clearly and convincingly supported by the record. And the appellate court relies on the trial court's factual findings underlying those sentencing findings so long as they are supported by some competent, credible evidence.

## II. ANALYSIS: APPLICATION TO POLIZZI'S CASE

{¶ 79} The trial court sentenced Polizzi to the second highest possible term of imprisonment on each count, 17 months on each fourth-degree-felony gross-sexual-imposition count and 54 months on each third-degree-felony sexual-battery count. *See* R.C. 2914(A)(3)(a) and (A)(4). And after making the three requisite

consecutive-sentencing findings under R.C. 2929.14(C)(4), the trial court ordered every prison term from each sentence to run consecutively for a total of 358 months (almost 30 years), which constituted the "aggregate of all of the terms so imposed," R.C. 2929.14(C)(9).

{¶ 80} On appeal, Polizzi challenged the trial court's imposition of consecutive sentences under R.C. 2929.14(C)(4), contending that the record does not support the trial court's conclusion that consecutive sentences are not disproportionate to the seriousness of his conduct and to the danger he poses to the public.

{¶ 81} Under R.C. 2953.08(G)(2)(a), the appellate court reviews the entire record, taking the trial court's findings of fact as true so long as they are supported by some competent, credible evidence, and determines whether the record *does not* clearly and convincingly support the trial court's R.C. 2929.14(C)(4) consecutive-sentencing findings. Since the trial court was required to find that consecutive sentences were not disproportionate to the seriousness of the offender's conduct and to the danger the offender posed to the public, and in doing so, necessarily made a determination about what sentences are proportionate to the seriousness of the offender's conduct and to the danger the offender posed to the public, those determinations can be reviewed by the appellate court under the aforementioned standard.

{¶ 82} In the proportionality analysis, the trial court determines the seriousness of the offender's conduct and the danger the offender poses to the public first so that it may choose the individual sentences to run consecutively that will be proportional to that determination. On appeal, the appellate court works backwards. It looks at the combination of individual sentences that the trial court ran consecutively to reach the aggregate prison term and determines whether there is clear and convincing evidence that the trial court's finding that the aggregate prison term is proportionate to the seriousness of the offender's conduct and to the

danger the offender poses to the public is not supported by the record. So the question in this case specifically is whether the Eleventh District correctly analyzed the record to determine if it clearly and convincingly does not support the trial court's determination that the consecutive sentences—here, the 358-month aggregate prison term—was not disproportionate, i.e., was proportionate, to the seriousness of Polizzi's conduct and to the danger he posed to the public.

{¶ 83} Because Polizzi was sentenced to two 17-month prison terms and six 54-month prison terms, the range of possible consecutive sentences is between 71 months in prison and 358 months in prison, with 17 different consecutive-sentencing combinations to result in an aggregate prison term. If Polizzi's conduct was deemed more serious and the danger he posed to the public was deemed higher, proportionality required the trial court to run consecutively a combination of sentences that total an aggregate amount that fell within the higher range. If Polizzi's conduct was deemed less serious and the danger he posed to the public was deemed lower, proportionality required the trial court to run consecutively a combination of sentences that total an aggregate amount that fell within the lower range. Here, working backwards as the appellate court must on review, because the trial court imposed a combination of consecutive sentences that resulted in the highest possible aggregate prison term, there must be clear and convincing evidence that the record does not support the trial court's finding that Polizzi's conduct was more serious and that he posed more danger to the public in order to reverse the aggregate prison term imposed. Thus, the Eleventh District should have reviewed the record to determine whether there was clear and convincing evidence that does not support the trial court's findings that Polizzi's conduct was more serious and that he was more dangerous to the public.

{¶ 84} The Eleventh District determined that the record supported the trial court's findings concerning the seriousness of Polizzi's conduct. 2021-Ohio-244 at ¶ 46 (11th Dist.), *rev'd*, 2022-Ohio-4728; *see* 2024-Ohio-142 at ¶ 11 (11th Dist.)

(readopting the "reasoning and holding" from 2021-Ohio-244 (11th Dist.)).  And I agree.  Polizzi pursued and groomed two 17-year-old victims while he was their high-school teacher to obtain their consent to engage in sexual activity.  He was in a position of power as their educator, and he violated their trust in a place where they, as children, should feel safe.  And Polizzi's abuse of these victims was not a one-off offense: Polizzi committed offenses against the first victim beginning in 2008 and continued his abuse of her over a nine-month period, and he then committed offenses against a second victim in 2010 and continued his abuse of her over a two-month period.  Because of Polizzi's actions, the victims suffered enduring emotional and psychological harm.  Thus, there is not clear and convincing evidence that the trial court's seriousness determination was not supported by the record.

{¶ 85} And the Eleventh District did not find that the record did not clearly and convincingly support the trial court's finding that Polizzi was a danger to the public.  I also agree with that determination.

{¶ 86} There is some evidence in the record that tends to refute the trial court's finding that Polizzi was a significant danger to the public.  The presentence-investigation report ("PSI") identified that Polizzi was of low or moderate risk to reoffend; a sex-offender evaluation had a score of "0," which falls in the low-risk category and has a five-year sexual-recidivism rate of 2.8 percent; Polizzi had not committed any other crimes in the eight to ten years since he had committed the crimes against the second victim; and he had a strong family support system to keep his likelihood of recidivism low.

{¶ 87} But the record shows that the factors from the PSI used to determine whether Polizzi would reoffend are in conflict with the facts of this case.  Polizzi committed his offenses against two separate victims over separate periods within a two-year time frame, and he did not stop committing the abuse until he was fired from his job as a teacher.  After he was fired, he continued to harass the second

victim two years later, which caused her to contact the authorities. This evidence does not show a lack of recidivism, as this was not a one-off incident. Polizzi continued his abusive behavior, moving from one victim to another, and he continued his harassment of one of the victims after he was fired, which undermines the PSI and lends support to the trial court's finding that Polizzi was a danger to the public.

{¶ 88} And Polizzi's lack of committing additional criminal conduct during the eight to ten years in between his committing and being charged with the offenses does not make up for the two years he sexually abused high-school students and his continuous harassment of the second victim years later. Had the police investigated and charged Polizzi immediately after the second victim brought this abuse to light in 2012 rather than failing to do so until 2017, the fact that Polizzi committed no crimes in those eight to ten years would not have been a factor to support a lack of recidivism and would have offered no weight in considering whether he was a danger to the public.

{¶ 89} Furthermore, Polizzi committed all these offenses while married. This fact explicitly refutes the evidence that his family support, which was available and unchanged when he committed the offenses, would keep him from reoffending.

{¶ 90} And Polizzi's lack of remorse and attitude toward the victims cannot be understated. While Polizzi pleaded guilty to eight offenses, which shows that he took some responsibility for his actions, and the State dismissed 72 offenses, the record indicates that he lacked genuine remorse and exhibited anger toward his victims once his conduct was revealed. Furthermore, Polizzi silenced his victims during the abuse by suggesting that they would be expelled from school if they told anyone. Not only did Polizzi abuse his victims physically, but he threatened to take away their education and future if they told anyone about the abuse, i.e., that they would be punished for *his actions*. That type of behavior is predatory and dangerous, especially when coming from a teacher.

{¶ 91} For those reasons, the Eleventh District could not find that the record clearly and convincingly does not support the trial court's determination that Polizzi's conduct was incredibly serious and that he posed a significant danger to the public. And thus, because these findings necessarily required that the trial court impose consecutive sentences with an aggregate prison term in the higher range of available aggregate prison terms, the Eleventh District could not find that the record clearly and convincingly does not support the trial court's imposition of the 358-month aggregate prison term as proportionate to the seriousness of Polizzi's conduct and to the danger he posed to the public.

{¶ 92} For those reasons, I agree with the majority opinion that Polizzi's consecutive sentences should be affirmed.

### III. CONCLUSION

{¶ 93} The statutory scheme for imposing consecutive sentences requires a trial court to consider and determine the aggregate prison term in analyzing whether the consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. This conclusion is supported by the proportionality requirement in R.C. 2929.14(C)(4) and the General Assembly's statement in R.C. 2929.14(C)(9) that consecutive prison terms, imposed under R.C. 2929.14(C)(4), i.e., consecutive sentences, are "the aggregate of all the terms so imposed."

{¶ 94} And as a result, the appellate court may, under R.C. 2953.08(G)(2)(a), analyze on appeal whether the record clearly and convincingly does not support the trial court's proportionality finding—which, again, establishes the aggregate prison term. The appellate court's analysis is an independent one in which the burden of proof is deferential to the trial court's sentencing findings; however, the appellate court must take the trial court's factual findings that underly the sentence as true, so long as they are supported by clear and convincing evidence in the record.

{¶ 95} Because the majority opinion uses an incorrect analysis but still reaches the right result, I respectfully concur in judgment only.

———————————

**BRUNNER, J., concurring in judgment only.**

{¶ 96} I agree with the analysis set forth in the first opinion concurring in judgment only, with one exception. In my view, proportionality review under R.C. 2929.14(C)(4) requires some comparison between sentences imposed in similar cases. Only by engaging in such a comparison can a trial court ensure that an offender's sentence is "consistent with sentences imposed for similar crimes committed by similar offenders," R.C. 2929.11(B); *see also* R.C. 2929.12(B) and (C) (requiring a trial court to compare an offender's conduct to "conduct normally constituting the offense"). I therefore join the first opinion concurring in judgment only except as to Part I(C)(2)(c) of that opinion.

———————————

Charles E. Coulson, Lake County Prosecuting Attorney, and Teri R. Daniel, Assistant Prosecuting Attorney, for appellee.

Berkman, Gordon, Murray & DeVan, Mark R. DeVan, and William C. Livingston, for appellant.

Steven L. Taylor, urging affirmance for amicus curiae Ohio Prosecuting Attorneys Association.

Russell S. Bensing, urging reversal for amicus curiae Ohio Association of Criminal Defense Lawyers.

Cullen Sweeney, Cuyahoga County Chief Public Defender, and Erika B. Cunliffe and Robert B. McCaleb, Assistant Public Defenders; Elizabeth Miller, Ohio Public Defender, and Patrick Clark, Assistant Public Defender; Raymond T. Faller, Hamilton County Public Defender, and David H. Hoffman, Assistant Public Defender; Theresa G. Haire, Montgomery County Public Defender; and Joseph Shell, urging reversal for amici curiae Cuyahoga County Public Defender, Ohio

Public Defender, Hamilton County Public Defender, Montgomery County Public Defender, and Summit Legal Defenders.

_____